Thank you, your honor. Good morning. May it please the court. I apologize for only appearing by phone, but I am the IT guy in my office, and this is as far as we got. So I will hesitate when I can. I have you on screen, but I have a delay there. So I will hesitate if I hear any interruption for questions. I'll begin with the Social Security disability individual before us, George Durose. George was, at the time of disability, a 10th grade educated, I don't know if he finished 10th grade, individual, no GED, 51 years old at the time of his disability, which is October 2013. For purposes of a short 10-minute argument, I'd like to begin, because the court has our briefs, but begin with the medical vocational guidelines. Because under 201.10, with his education, limited as it is, with his age, and with his medical problems, if he is limited to sedentary work, it mandates an automatic award of benefits. So that's where I'd like to start, is this is an individual who is so disabled that he comes to the hearing on the edge of being awarded without need for hearing. The ALJ reviews the information and makes findings and determines he is capable of not a full range of light work, but light work except he can only stand, walk, four hours out of an eight-hour day. I think that's the crux of the problem, the focus of the error, is where does that four hours come from? Where does that limitation exist in terms of objective medical evidence? Now, one of the problems I struggle with in representing individuals such as George is he didn't have any money. He didn't have any money for medical care. He undergoes a cervical fusion at the end of 2012, and following that, the records get very scant, and he testifies, I just can't afford $90 for a 15-minute doctor visit. And so he doesn't follow up, and a lot of tests that he needs are not done. So the record is not overwhelming in terms of medical records, but what it does have is a substantial amount of objective findings which confirm his description of his limitations. Now, at page 36 of my brief, I set forth George's description of what his limitations are, why he felt he was disabled, unable to stand, unable to use his hands. Does the ALJ have to believe that? Obviously, no. The rules of the circuit, the rules governing the regulations governing Social Security do not require that the ALJ accept his testimony. And especially here, in view of the limited treating doctor records, they sent him on for an examining physician review. Now, the doctor treating him had made multiple efforts to get tests for the rheumatologist, to get tests to find out what was the basis for... Let me see if I can direct this. So what you're saying is that he, to a degree, his own report was discounted because he didn't get tested, he was referred to. It's fairly apparent that that was because he couldn't pay for it, and then our case law doesn't allow that discounting. But he still needs affirmative evidence of his disability, which is a separate question. And as you say, because he didn't get a lot of tests, they're somewhat thin, or maybe thinner than they would be otherwise. So could you just point to what is in the record that should have been looked at and wasn't? My understanding is that the ALJ said that he wasn't going to look at the examining notes of the treating doctor just as at his conclusions, and I don't understand that to be appropriate. So if you looked at the notes and the record as a whole, what would you find of the treating doctor? Well, from treating doctors and objective findings, because that is really the focus here, he has an MRI of the right shoulder in 2011, has a rotator cuff tear, the AC joint has arthritis, the left shoulder in April of 2012 had a rotator cuff impingement. Those are followed up and confirmed to still exist in June 2015 when Dr. Klepp sees it. So that's both the shoulders. Well, I'll get back to the examining doctor who ignores both of those. Next, he has a back MRI before the cervical fusion, December of 2011. He has a back lumbar spine MRI. It shows left side neuroforaminal encroachment on the L4 nerve root where there's an asymmetrical bulging disc. Now, that's objective. There's no evidence that's ever repaired. There's no evidence of treatment. And so in terms of objective findings, those objective findings support George's description that he has horrible pain when he's walking, he has back pain, the legs go numb. There's references from the treating doctor January of 12, the right leg and knee, there's numbness and tingling in both. There is reference in March of 12, he's still working. March of 12, he has bilateral leg numbness in both feet. And then the rheumatologist sees him October and November of 13 and describes diffuse myalgias. Well, what's the cause of those? We don't know. Those tests never happen. But all of those objective evidence, the MRIs of both shoulders, the MRI of the low back are simply ignored when the administration properly sends him to the examining physician. The examining physician is Dr. Hilo. And Dr. Hilo submits a report. And in his report, what's significant is he does not say he can stand four hours. He does not say anything about sitting four hours. He indicates that, I'll read it, I find no indication in his exam that he is misreporting his pain. Was that mentioned in the ALJ opinion? No. That is simply ignored. Now, the second part, and this I don't believe is in the ALJ opinion either, from 425 in the record. He says a realistic assessment of the level of disability should await the effective resolution of his depression. Physically, he appears capable of at least moderate intensity work, but he clearly does not believe it. Now, what's the basis of that finding? Well, he says, I see no physical or x-ray evidence justifying restrictions in standing, walking, or sitting. Rheumatology workup may produce more evidence. Now, he doesn't have access to the three MRIs that the court's looking at here. Defense counsel and I and the court have available far more information than this examining physician. Why is that? Why is that? I don't know why he didn't have those available, but he does not reference them. And when he makes the statement saying, I see no physical or x-ray evidence, he never mentions any of the three MRIs. And so I think we come back to the reference this court has noted that when you have a, we have treating doctors here that have medical, objective medical findings and opinions about what's wrong with him. And if those are going to be rejected by another non-treating physician, that a physician needs to have, and the court has called it, substantial evidence must support his opinion. And in this case, it's clear he didn't have that. I thought they needed clear and convincing reasons to disregard the treating doctor. Clear and convincing is required if there is no contradiction by another doctor. If we're going to say Dr. Helo created... Oh, I see. Dr. Helo did examine him. Dr. Helo examined him and took an x-ray. And so when you look at rejecting it when you have another doctor, you have to have specific legitimate reasons. Then the important language for this case, supported by substantial evidence in the record. Here, Helo's record, Helo's opinion is not supported by substantial evidence in the record. All the MRIs discount his findings. Okay, your time is up. Excuse me. Thank you. I'll give you one minute. Mr. McClain, also by phone. Thank you, Your Honors. Good morning. Jeffrey McClain on behalf of the Commissioner of Social Security. This is a closed period at issue case stretching from October 2013 to June 2014. What are you saying? It's a what case? It's a closed period at issue case. Oh, I see. So there's a fairly limited stretch of time that we're dealing with here. And appellant's counsel is correct. The treatment records during this period are not robust. And the ALJ and the district court, as I understand it, said that they could not rely on the treatment notes of the treating doctor. And that's not the law. Is that right? That's wrong. If that was what the ALJ had done, I would agree, Your Honor. That is error. The district court specifically said that, right? What about the ALJ? Did he say that? I thought he did. Well, there are a few different treating sources in the records, Your Honor. There's Dr. Mejia that the ALJ discussed and whose treatment notes don't conflict with the ALJ's findings. And there's also Dr. Arguelles, who is the rheumatological specialist that Dr. Mejia referred the appellant to. And the ALJ did not necessarily reject any functional limitations by Dr. Arguelles because there weren't any functional limitations offered. Instead, Dr. Arguelles identified a series of possible diagnoses that could apply to the appellant in this case. And as stated, the ALJ rejected Dr. Arguelles' differential diagnoses because they were not supported by any testing. That testing wasn't secure because of a lack of funds. The ALJ, or excuse me, the agency, however, recognized that there was an inadequacy in the record and developed it by calling for and paying for a consultative examination by Dr. Hilo and a psychological examination by Dr. Peterson. Although appellants suggest that Dr. Hilo's examination doesn't support the ALJ's findings, they do support the ALJ's findings. Dr. Hilo... Excuse me. Mr. Silent said that Dr. Hilo didn't have imaging reports. Is that true? I don't recall that Dr. Hilo reviewed the imaging. Then how could he know what was wrong? Because he takes a history of the complaint from the person they're examining and they perform a full body examination where they identify the range of motion, the strength, the standing, walking, lifting kind of functional abilities that we rely on in order to determine someone's functional ability. But Dr. Hilo also said in the ALJ didn't note this, that he didn't disbelieve the reports of pain. That's true, Your Honor. But can it be from the pain analysis that he came to this conclusion? If he didn't have the imaging, how did he come to this conclusion? Well, based on the functional testing that Dr. Hilo performed, and that was a statement that I think sums up this case pretty well, which was on ER 425, where Dr. Hilo said physically he, being the appellant, appears to be capable of at least moderate intensity work. But he clearly does not believe it. And his capability of at least moderate intensity work is consistent with the ALJ's determination that he can perform a reduced range of flight work. Now, there may be a genuine belief on the part of... It seems that what you're saying, it seems what you're saying is this. The man was reporting pain. Dr. Hilo said serious pain. There were imaging, images available which this doctor did not see. Do those images in some respect support what he was saying? With regard to the state of his shoulder, for example? Well, it did support that there were severe impairments. And then Dr. Hilo says, well, I don't know what's causing this, but he didn't look at the images, and he doesn't say there was no pain. So what's his conclusion based on? I mean, the fact that somebody can reach doesn't mean that there isn't an internal problem and that he's not in terrible pain doing it. And then he can continue to do it forever for a substantial amount of time in jail. It just seems that he doesn't have the information. Well, with regard to the reaching in particular, the ALJ, or excuse me, Dr. Hilo noted on ER 425 that the appellant has some restriction in overhead movement in both shoulders, so may not be able to work above chest height with any level of performance. And the ALJ identified that there were reaching restrictions and included reaching restrictions in the residual functional capacity. ALJ said that with bilateral upper extremities, he can reach lift overhead occasionally, not to exceed a weight of two pounds, which is consistent with Dr. Hilo's findings. Dr. Hilo's opinion, therefore, supported the ALJ's functional abilities, and it was a sound opinion. You know, I'd note there are no other opinions in the record stating that this individual was disabled. All the opinions of functional limitations suggest an ability to work that's consistent with the ALJ's findings. With regard to the credibility determination, the ALJ adequately determined what allegations were not credible and why, and provided a number of reasons for finding the individual not credible. Most importantly, the ALJ determined that objective medical evidence did not fully support the allegations and noted the treatment... Council, what's your response to the contention that, you know, the ALJ's credibility determination is tainted because he relied on, the ALJ relied on a conservative course of treatment or failure to follow up on certain kinds of treatment, and yet that was due to his poverty? So, when the ALJ mentioned the conservative course of treatment, the ALJ was talking specifically about Dr. Mejia, and Dr. Mejia prescribed Celebrex primarily during the period at issue, which is an anti-inflammatory drug for arthritis, and Dr. Mejia didn't recommend any greater treatment than that. Now, had the ALJ relied on the lack of testing by Dr. Arguelles as a reason to reject the subjective testimony, that would have been error because the ALJ didn't mention the lack of funds in discussing Dr. Arguelles, but that wasn't the ALJ's finding in this case. I'd also note that the ALJ offered other valid reasons supported by substantial evidence, which were sufficient to support the credibility determination, even if the conservative treatment finding was error. That included the objective medical evidence and the effectiveness of the treatment. The ALJ noted that the cervical surgery was successful in resolving... Just a minute on that. It was successful before the relevant period, but by the time of the relevant period, he was, again, complaining of neck pain, no? Your Honor, he did complain of neck pain. However, there weren't any objective findings to support a deterioration in the cervical spine after the surgery. Dr. Helo, for example... But if the statement is a cervical... The statement in the ALJ opinion was that cervical pain seems to have resolved prior to the alleged onset. That's not true. He still had the cervical pain. It was true insofar as it resolved prior to the alleged onset date. Your Honor is correct that there was some recurrence of complaints on the part of the complainant, or the appellant, excuse me. However, subsequent testing, such as the x-ray performed by Dr., or interpreted by Dr. Helo, didn't suggest a deterioration in the cervical functioning in terms of objective findings. But he didn't have the imaging. Well, Dr. Helo did have an x-ray and ordered that in order to more fully develop his review of the clinical findings. And, again, that's in addition to the objective testing that Dr. Helo performed in terms of motor functioning, strength, range of motion, standing, walking. Those types of testings that are helpful in determining what an individual is capable of performing. And I apologize, Your Honors. I intended to click a timer when I began. I suspect I'm running low on time. You're actually out of time, but why don't you guys have a minute? Thank you, Your Honor. The only thing I would say, lastly, is that there was no restriction to sedentary work in this case. The LJ found the individual capable of a reduced range of white work. And because the RFC fell in between exertional categories, the LJ properly called a vocational expert to make the step-by finding. That was a proper determination by the LJ. And in light of that, the LJ's decision was supported by substantial evidence, and I'd ask this quorum to affirm. Thank you very much. Thank you very much. Mr. Seidlitz? Thank you, Your Honors. I would only make one comment. I appreciate the extra minute. I mentored with an attorney who didn't espouse a legal theorem of proofs in the pudding, but he lived by it. And I think the proof is in the pudding here. Dr. Helo did not put a four-hour limit on this claimant in terms of standing. So the ALJ found a four-hour limit on standing. If he had believed Dr. Helo, there would have been an eight-hour limit on standing. So even the ALJ did not accept what Helo was saying and never explained it. But certainly, that indicates even the ALJ did not completely believe those limits. I appreciate the time in front of this court. I'm looking at the ALJ opinion. I'm trying to find where he talked about Mr. DeRosa's credibility. I can't find that paragraph. I know it's there, but I can't find it. It should be in paragraph five. All right. Well, I'll look later. Thank you very much for your argument. Thank you, Your Honor. Rose v. Saul is submitted. The next case, Walcott v. Barr, has been submitted on the brief. And we'll go to Platt v. Moore. And after that, we will take a short break.
judges: Tashima, Berzon, Collins